**FILED IN CHAMBERS**
**U.S.D.C ATLANTA**

Date: Oct 28 2021

KEVIN P. WEIMER , Clerk

By: s/Kari Butler

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEFFREY ANDREWS,

     Plaintiff,

  v.

COBB COUNTY SCHOOL
DISTRICT,

     Defendant.

CIVIL ACTION FILE NO.

1:20-CV-04043-MLB-WEJ

## **FINAL REPORT AND RECOMMENDATION**

Plaintiff, Jeffrey Andrews, alleges that his former employer, the Cobb County School District ("CCSD"), interfered with his ability to take medical leave and retaliated against him for doing so in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. (Compl. [1] Counts I-II). He also alleges that the CCSD discriminated against him based on his disability, failed to accommodate his disability, and retaliated against him for engaging in protected activity (i.e., requesting reasonable accommodation), all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (Compl. Counts III, V-VI).

This matter is before the Court on Defendant's Motion for Summary Judgment [35].   For the reasons explained below, the undersigned **RECOMMENDS** that Defendant's Motion be **GRANTED**.

## I.   STATEMENT OF FACTS

In support of its Motion for Summary Judgment, defendant as movant filed a Statement of Material Facts [35-1] ("DSMF").  See N.D. Ga. Civ. R. 56.1(B)(1). As required by Local Civil Rule 56.1(B)(2)(a), plaintiff submitted a response to those proposed facts.  (See Pl. Resp. to DSMF [38] ("PR-DSMF").)  Further, as allowed by Local Civil Rule 56.1(B)(2)(b), plaintiff submitted a statement of additional material facts.  (See Pl.'s Statement of Undisputed Material Facts [39] ("PSUMF").)  As required by Local Civil Rule 56.1(B)(3), defendant submitted a response.  (See Def.'s Resp. to PSUMF [41] ("DR-PSUMF").)

The Court uses the parties' proposed facts and responses thereto under the following conventions.  Where one side admits a proposed fact, the Court accepts it as undisputed for purposes of this Motion and cites only the proposed fact.  Where one side denies a proposed fact, the Court reviews the record cited and determines whether a fact dispute exists.  If the denial is without merit, and the record citation supports the proposed fact, then the Court deems it admitted and includes it herein.

2

The Court sometimes modifies a proposed fact based on the record cited by the party or in the opposing party's response.  Given the duplication between the parties' proposed facts, the Court sometimes includes one of them and uses a "see also" signal to the other.  Finally, the Court excludes immaterial facts,[1] includes some facts from its own review of the record, see Fed. R. Civ. P. 56(c)(3), and considers all proposed facts in light of the standards for summary judgment, set out infra Part II.

### A.    The Parties and Plaintiff's Job Duties

The CCSD is the second largest school system in the State of Georgia, and is responsible for educating more than 111,000 students in a diverse, constantly changing suburban environment, operating 112 unique schools and employing approximately 18,000 people.  (DSMF ¶ 1.)

The CCSD originally hired Mr. Andrews in June 2015 as a custodian at Riverside Primary School.  (DSMF ¶ 2; see also PSUMF ¶ 1.)  On May 13, 2017, the CCSD promoted Mr. Andrews to Head Custodian II at Birney Elementary

---

[1] For example, the Court excludes DSMF ¶¶ 7-12 because plaintiff's performance issues are unrelated to his discharge are immaterial.

3

School.  (DSMF ¶ 3; <u>see also</u> PSUMF ¶ 2.)   The principal at Birney during the relevant time period was Monica Howard.  (DSMF ¶ 16; <u>see also</u> PSUMF ¶ 6.)[2]

As a Head Custodian, the requisite physical activities included "walking, standing, kneeling, negotiating stairs and ladders," and "lift[ing] and transport[ing] 75 pounds over short distances." (DSMF ¶ 4.)  Mr. Andrews's job duties as listed on the Head Custodian II job description included prompt and regular attendance; supervising the total custodial program of the school; ordering supplies and requesting equipment repairs through the work order system; overseeing proper use and storage of all equipment and supplies; training subordinate staff on custodial procedures and equipment; performing minor maintenance as needed such as changing light bulbs in ceilings up to ten feet in height; maintaining understanding of custodial procedures and equipment; securing building as directed; inspecting assigned school building, related equipment and grounds for cleanliness, appearance and operating conditions; reporting areas of concern to principal; scheduling cleaning around extracurricular activities; cleaning entire building

---

[2] The Court excludes PSUMF ¶¶ 4-5 and 11 as immaterial because they relate to plaintiff's interaction with a former Birney principal, Mr. Perkins, in 2018, and even if material, fail to create disputed issues of material fact.

regardless of ceiling height; conducting monthly playground inspection for damaged or unsafe conditions; conducting monthly inspection of fire extinguishers; and performing other duties as assigned by the appropriate designee.  (Id. ¶ 5.)

After reviewing the job description summarized above, Mr. Andrews testified he had to stand, walk around, and bend over in order to perform the duties listed therein, because "there's no job you can do sitting." (DSUMF ¶ 29, modified per record cited.)[3]  He added that his Head Custodian position required standing and walking around for the entire eight hours of his workday, except for his thirty minute lunch break.  (DSMF ¶ 6.)  However, staff members may take breaks as needed.  (PR-DSMF ¶ 6; see also PSUMF ¶ 17.)

B.   **CCSD's FMLA/ADA Policies**

CCSD policy requires that an employee be able to perform all essential functions of his position before returning from FMLA leave, and an employee must submit a certification from his health care provider that he is able to resume work. (DSMF ¶ 37; see also PSUMF ¶¶ 20-21.)

---

[3] Although plaintiff disputes the fact preceding this note (see PR-DSMF ¶ 29), the record he cites fails to do so.  Thus, the Court deems DSMF ¶ 29 admitted.

CCSD policy states that if an employee requires an accommodation to perform the essential functions of his position, then it is the employee's duty to request the accommodation. If an accommodation is requested, the employee's request is handled by the CCSD's Support Services Department. (DSMF ¶ 38.)[4]

### C.     Plaintiff's December 17, 2018 FMLA Leave Request

Mr. Andrews requested FMLA leave on or about December 17, 2018 in order to have a surgical procedure that would place stents in his legs; he had this surgical procedure in January 2019. (DSMF ¶ 13.) Following this procedure, Mr. Andrews was cleared to return to work on February 4, 2019 without restrictions and returned on that date to his position as Head Custodian. (Id. ¶ 14.)[5]

---

[4] As will be discussed in detail infra, Jen Phillips in the CCSD's Human Resources Benefits Department assisted Mr. Andrews with his FLMA leave requests. However, she does not handle requests for accommodation from CCSD employees, and such requests go to the Support Services Department for handling by different individuals if an accommodation is requested. (DSMF ¶ 39.) Plaintiff's attempted denial of this proposed fact (see PR-DSMF ¶ 39) is non-responsive to it; therefore, the Court deems DSMF ¶ 39 admitted,

[5] Mr. Andrews was out on FMLA leave for six weeks, from December 17, 2018 through February 4, 2019, leaving only six weeks for the remainder of the rolling year through December 17, 2019. (DSMF ¶ 15.)

### D.   Interaction Between Principal Howard and Plaintiff

Plaintiff testified that before he had the aforementioned surgery, Ms. Howard had questioned him about his walk, and he explained that his gait was caused by the feeling in his foot.  (Andrews Dep. [36-1] 63, cited in PSUMF ¶ 9.)

After his return to work from the surgery, Mr. Andrews informed Ms. Howard that the blockage had "healed" and that he would have to attend periodic follow-ups with his physician.  (DSUMF ¶ 17; see also PSUMF ¶ 7, modified per record cited.)  Ms. Howard testified that she did not observe anything out of the ordinary when plaintiff was walking, and that even though she noticed his limp, she did not believe it was unusual, and that she was not aware of plaintiff's formal diagnoses; on one occasion when he complained of foot pain, she gave him a card of a podiatrist she had seen.  (Howard Dep. [36-3] 9-10, 22, cited in PSUMF ¶ 8 & DSUMF ¶ 45.)  She opined that Mr. Andrews had a "cool-type of walk."  (Howard Dep. [36-3] 9.)

### E.   Plaintiff's September 16, 2019 FMLA Leave Request

Mr. Andrews requested additional FMLA leave because his physician wanted him to rest his feet to avoid having surgery on his bunions; accordingly, plaintiff's school submitted his request for FMLA leave to the CCSD Human

7

Resources Benefits Department on September 16, 2019.  (DSMF ¶ 20; see also PSUMF ¶ 10, modified per record cited.)  Mr. Andrews was allowed to begin his FMLA leave immediately on September 16, 2019, pending receipt of his supporting paperwork.  (DSMF ¶ 21.)[6]

Despite submitting FMLA paperwork, plaintiff testified that he was "able to perform his duties at 100 percent" and "wasn't limited to not being able to do a job."  (Andrews Dep. [36-1] 91, cited in PSAMF ¶ 16 & DSMF ¶ 44; see also id. at 101, asserting that he "was still able to perform my duties.")  Mr. Andrews also testified that he "didn't have a problem with actually walking," that his condition (neuropathy) is "not a disability," that he "could walk," that he "can run," that when he obtained inserts for his shoes, "everything was great," and that his hyperkeratosis "never flared up."  (DSMF ¶ 43.)[7]

---

[6] According to Mr. Andrews's medical records, which were submitted to the CCSD in October 2019 by his physician, plaintiff had developed hyperkeratosis (defined as a thickening of the outer layer of the skin) on the bottom of his feet. (DSMF ¶ 18.)  Plaintiff asserts that he is disabled.  (PSUMF ¶ 3.)  However, the Court excludes that proposed fact as an improper legal conclusion.  See N.D. Ga. Civ. R. 56.1(B)(1)(c).  Moreover, his claim that the CCSD "perceived" him as disabled (PSUMF ¶ 3) is excluded because it is not supported the record cited.  See N.D. Ga. Civ. R. 56.1(B)(1)(a).

[7] Although plaintiff disputes the above proposed fact (see PR-DSMF ¶ 43), he testified as quoted above.  Thus, the Court deems DSMF ¶ 43 admitted.

8

On September 16, 2019, Jen Phillips in the Human Resources Benefits Department sent Mr. Andrews an email containing his FMLA leave paperwork, which stated that his "request for a leave of absence is currently under review," that all of the attached "paperwork should be completed and returned to the Benefits Department within 15 days of this letter," and that Mr. Andrews's "leave is unapproved until documents listed in numbers 1 and 2 below are received by the Benefits Department." (DSMF ¶ 22.)[8]  Such documents included Request for Leave Form GARH-1, which had to be signed by his supervisor, as well as a Certification of Health Care Provider Form GBRIG-1, which had to be "completed by the physician and returned to the Benefits Department by 10/1/19." (Id. ¶ 23.)

**F.    Defendant's October 7, 2019 Letter to Plaintiff**

Because the CCSD had not received the paperwork it required from Mr. Andrews by the October 1, 2019 deadline, it mailed a certified letter to him on October 7, 2019 stating that it had not received the required paperwork within

---

[8] Ms. Phillips was the only CCSD employee assigned to handle plaintiff's request for FMLA leave. (PSUMF ¶ 12.)  However, as defendant shows, other individuals worked on his file, including Ms. Phillips's supervisor and Christopher Dowd, Executive Director of Employee Relations for the CCSD, who made the decision to terminate plaintiff and who sent him the October 31, 2019 termination letter (discussed infra). (DR-PSUMF ¶ 12.)

fifteen days of its September 16, 2019 correspondence. (DSMF ¶ 24.)  The letter of October 7, 2019 clarified that Mr. Andrews was on an unauthorized leave of absence given his failure to return the required paperwork, and stated that his file would be forwarded to the Employee Relations Department if the required paperwork was not received by October 14, 2019.  (Id. ¶ 25.)  Mr. Andrews received the October 7, 2019 letter.  (Id. ¶ 26.)

### G.   Plaintiff's Submissions of October 11, 2019

Mr. Andrews submitted the required Request for Leave Form (GARH-1) on October 11, 2019.  Although the Request for Leave Form provided September 13, 2019 as the start date for his leave, the "Date Requested Leave Ends" line was left blank.  (DSMF ¶ 27.)[9]

Mr. Andrews's physician submitted the required Certification of Health Care Provider Form (GBRIG-1) on October 11, 2019, which stated that Mr. Andrews had hyperkeratosis on both feet, and that he would be "unable to stand for long periods of time" while the condition persisted.  (DSMF ¶ 28; see also PSUMF ¶

---

[9] Although plaintiff disputes the above proposed fact (see PR-DSMF ¶ 27), the "Date Requested Leave Ends" blank is clearly blank on the form.  (See Dowd Decl. Ex. J [35-3] 28.)  Thus, the Court deems DSMF ¶ 27 admitted.

14.)[10]  Ms. Phillips did not contact this physician's office after receipt of the form. (PSUMF ¶ 24.)

Ms. Phillips telephoned Mr. Andrews on October 11, 2019 and left a message explaining that she needed an end date on his Request for Leave Form (GARH-1).  (DSMF ¶ 30.)  Ms. Phillips could not confirm that Mr. Andrews received her voicemail. (PR-DSMF ¶ 30.)  Nevertheless, it is undisputed that Mr. Andrews did not submit an updated GARH-1 form containing an end date.  (DSMF ¶ 32.)  In fact, CCSD did not receive any additional paperwork from Mr. Andrews. (Id. ¶ 35.)

_____

[10] Plaintiff's medical records indicate that a physician treated his hyperkeratosis in October 2019 by shaving calluses and corns off his feet with a scalpel.  (DSMF ¶ 19.)  Question 5 on the Certification of Health Care Provider form provides: "Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery?"  (Dowd Decl. Ex. F [35-3] 21, cited in PSUMF ¶ 13.)  Plaintiff's physician checked the box beside "No."  (Id.)  The CCSD notes that it placed plaintiff on continuous FMLA leave in September 2019 because that is what he sought, and plaintiff's doctor did not send in the Certification of Health Care Provider form until October 11, 2019, nearly four weeks after his continuous leave began.  (DR-PSUMF ¶ 13.)

11

### H.    The October 14, 2019 Release to Return to Work Form

On October 14, 2019, Mr. Andrews's physician submitted a "Release to Return to Work" (Form GARH-8) clearing him to return to work *without* restrictions on November 13, 2019.  (DSMF ¶ 33; <u>see also</u> PSUMF ¶ 25; Dowd Decl. Ex. K [35-3] 29-30.)[11]  Plaintiff's FMLA leave would be exhausted on October 25, 2019.  (DSMF ¶ 34.)  Although plaintiff testified that he believed he could have returned to work with restrictions before November 13 (PSUMF ¶ 22)), defendant would not allow him to return to work from FMLA leave *with* restrictions.  (PSUMF ¶ 18.)

Ms. Phillips received the Release to Return to Work form and provided it to her supervisor; however, she did not communicate with plaintiff after she received it.  (PSUMF ¶¶ 26-27.)  Ms. Phillips also did not inform plaintiff that he could request a reasonable accommodation.  (<u>Id.</u> ¶ 23.)  However, the CCSD's policies regarding requesting a reasonable accommodation are available to all employees

---

[11] Plaintiff's physician submitted this "Release to Return to Work" (Form GARH-8) in response to an email from Ms. Phillips to plaintiff dated October 11, 2019, which stated as follows:  "Here is the doctor release form I need filled out. It must say you may work without restrictions."  (DSMF ¶ 31, modified per record cited; <u>see also</u> PSUMF ¶ 19, citing Phillips Dep. Ex. 3 [36-2] 25.)

on its public website.  (DR-PSUMF ¶ 23.)  Moreover, employees are informed at hire that both the CCSD's employee handbook as well as other CCSD policies are posted on that website.  Finally, plaintiff acknowledged that he received and reviewed the CCSD's employee handbook upon his hire, and the acknowledgment that he executed pointed him to the public location of the handbook and other CCSD policies.  (Id.)

## I.      CCSD's October 31, 2019 Letter to Plaintiff

On October 31, 2019, the CCSD sent Mr. Andrews a certified letter explaining that he had violated Administrative Rule GARH-R, Short-Term Leaves and Absences, by remaining out on unapproved leave, failing to submit necessary paperwork, and failing to report to work for twenty-seven consecutive workdays. (DSMF ¶ 40.)  The CCSD's certified letter further stated that Mr. Andrews's actions constituted job abandonment, and that it considered him to have voluntarily resigned as of October 31, 2019.  (Id. ¶ 41; see also PSUMF ¶ 28.)[12]  Mr. Andrews

---

[12] The Court excludes PSUMF ¶ 32 because it is immaterial whether Ms. Phillips could not answer whether she agreed with her superior's decision to terminate plaintiff's employment.

13

testified that he has no evidence that the CCSD considered his taking of FLMA leave in making its decision to terminate his employment. (DSMF ¶ 42.)[13]

Plaintiff asserts that he did not abandon his job; instead, the CCSD would not allow him to return following expiration of his FMLA leave. (PSUMF ¶¶ 29-30.) He also complains that no one from the CCSD contacted him to warn him that his employment was in jeopardy for not returning to work earlier. (Id. ¶ 31.)

The CCSD has no record of Mr. Andrews ever requesting a reasonable accommodation, either between his return to work in February 2019 and his subsequent FMLA leave request on September 16, 2019, or before, during or after he began his second FMLA leave on September 16, 2019. (DSMF ¶ 36.)[14] Indeed,

---

[13] Plaintiff disputes the above proposed fact, asserting that other depositions were taken after his, and that PSUMF shows that he has "plenty" of evidence that his FMLA was considered in making the decision to terminate his employment. (PR-DSMF ¶ 42.) However, neither PR-DSMF ¶ 42 nor a general reference to PSUMF provide specific citations to record evidence supporting the claim that the CCSD considered plaintiff's FMLA leave in making its discharge decision. Thus, the Court deems DSMF ¶ 42 admitted.

[14] Plaintiff disputes the above proposed fact, asserting that the FMLA Certification of Health Care Provider form "clearly indicates a request for accommodation." (PR-DSMF ¶ 36.) If there is an accommodation request in that form, it is not clear to the Court.

the CCSD was unaware that Mr. Andrews maintained that he had an alleged disability within the meaning of the ADA.  (Id. ¶ 46.)[15]

Plaintiff testified that he requested an accommodation of being allowed to sit down when his foot pain flared up.  (PSAMF ¶ 15.)  However, he does not say when he made this request or to whom it was made.  (Id., citing Andrews Dep. [36-1] 78.)  Plaintiff also supports PSAMF ¶ 15 with the assertion that the Certification of Health Care Provider form completed by his physician constituted a request for reasonable accommodation.  (See Andrew Dep. [36-1] 95; see also note 14, supra.)  However, he added that "I know I never, out of my mouth, asked for a chair."  (DSMF ¶ 47.)

## II.   STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The party moving for summary judgment

───────────────

[15] Plaintiff disputes the above proposed fact, asserting that he told former Birney Principal Perkins in 2018 that he had a medical condition that required treatment and that Principal Howard saw him limp.  (PR-DSMF ¶ 46, modified per record cited.)  However, these assertions fail to create material fact disputes because neither a claimed medical condition nor a limp necessarily constitute disabilities under the ADA.

bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is

16

appropriate.  <u>Rice-Lamar</u>, 232 F.3d at 840.  "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party."  <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried.  <u>Anderson</u>, 477 U.S. at 250.  The applicable substantive law will identify those facts that are material.  <u>Id.</u> at 248.  Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  <u>Id.</u>  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>  For factual issues to be "genuine," they must have a real basis in the record.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  <u>Id.</u> at 587.

17

## III.   DISCUSSION

Plaintiff makes claims for FMLA interference and retaliation, as well as claims of discrimination and retaliation under the ADA.  The Court addresses the FMLA and ADA claims separately below.

### A.   FMLA Claims (Counts I and II)

Congress enacted the FMLA in part to address problems arising from "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods."  29 U.S.C. § 2601(a)(4). Congress designed the Act to provide a balance between "entitl[ing] employees to take reasonable leave for medical reasons" and "accomodat[ing] the legitimate interests of employers."  Id. § 2601(b)(2)-(3).  "The FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'"  Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)).

To preserve the availability of FMLA rights and to enforce them, the Act creates two types of claims: (1) interference claims, in which an employee asserts

18

that his employer denied or otherwise interfered with his substantive rights under the Act, and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001); see also 29 U.S.C. § 2615 (prohibiting employer from interference with FMLA rights). Plaintiff makes both types of claims here.

### 1. **FMLA Interference (Count I)**

Under the FMLA's anti-interference provision, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the [FMLA]." 29 U.S.C. § 2615(a)(1). To state an interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Strickland, 239 F.3d at 1207; see also White v. Beltram Edge Tool Supply, Inc., 789 F.3d 1188, 1191 (11th Cir. 2015) ("An interference claim has two elements: (1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied her that benefit.").

Defendant argues that summary judgment should be granted in its favor on the interference claim because (1) plaintiff was unable to perform the essential functions of his position after exhaustion of his FMLA leave; (2) plaintiff failed to

19

complete all of his required FMLA paperwork within the fifteen-day deadline or subsequent extension; and (3) plaintiff received all the FMLA leave to which he was entitled. (Def.'s Br. [35-2] 9-13.)

Assuming arguendo that plaintiff submitted the paperwork necessary for the CCSD to approve his FMLA leave request, it is undisputed that, as of the date he left work, September 16, 2019, he had six weeks of FMLA leave remaining for the rolling year ending December 17, 2019. (DSMF ¶ 15.) It is further undisputed that Mr. Andrews received all of that FMLA leave.

When that six weeks of FMLA leave expired on October 25, 2019, plaintiff had a right of restoration to his job. See Martin v. Brevard Cty. Pub. Sch., 543 F.3d 1261, 1267 (11th Cir. 2008) (per curiam) ("An employee has the right following FMLA leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced.'") (quoting 29 U.S.C. § 2614(a)(1)(A)). However, there is an important caveat: "If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition . . . the employee has no right to restoration to another position under the FMLA.'" Diaz v.

Transatlantic Bank, 367 F. App'x 93, 95 (11th Cir. 2010) (per curiam) (quoting 29 C.F.R. § 825.216(c)).[16]

The information available to the CCSD at the time plaintiff exhausted his FMLA leave showed that (1) he had hyperkeratosis on both feet and would be "unable to stand for long periods of time" while the condition persisted (see DSMF ¶ 28, quoting Certification of Health Care Provider Form (GBRIG-1), received October 11, 2019); and (2) he could not return to work without restrictions until November 13, 2019.  (See DSMF ¶ 33, citing "Release to Return to Work" (Form GARH-8), received October 14, 2019.)  Because plaintiff's position as a janitor required him to stand and walk for the entire eight hours of his workday (except for a 30-minute lunch break), and he could not perform his job duties while sitting, plaintiff could not perform an essential function of his position.

Given these undisputed facts, plaintiff has no interference claim because he received all the FMLA leave to which he was entitled.  Giles v. Daytona State Coll., Inc., 542 F. App'x 869, 875 (11th Cir. 2013) (per curiam) ("The record confirms

_____

[16] The regulation quoted in Diaz notes that the employer may also have obligations under the ADA.  Diaz, 367 F. App'x at 95.  The Court addresses that issue infra.

21

that Giles used all of her available FMLA leave on June 22, 2009, and thus, there is no evidence that she was denied an FMLA benefit to which she was entitled."); Edwards v. WellStar Med. Grp., LLC, No. 1:18-CV-4492-MHC-LTW, 2020 WL 6293153, at *10 (N.D. Ga. May 15, 2020) ("Because the record establishes that Plaintiff used all of her FMLA leave prior to her termination on June 8, 2018, a reasonable jury could not find that Plaintiff was denied a benefit under the FMLA to which she was entitled."), R. & R. adopted, 2020 WL 6156566 (N.D. Ga. Sept. 8, 2020); Odum v. Dolgencorp, LLC, No. 4:14-CV-0151-HLM, 2015 WL 12697644, at *2 (N.D. Ga. Sept. 9, 2015) (adopting magistrate judge's recommendation that summary judgment be granted because plaintiff has no interference claim; he received all of the FMLA benefits to which he was entitled).

Moreover, given that plaintiff could not perform the essential functions of his position when he exhausted his FMLA leave, the CCSD did not interfere with his right to reinstatement. See Jones v. Gulf Coast Health Care of Del., LLC, 854 F.3d 1261, 1268 (11th Cir. 2017) ("Relevant caselaw suggests that an employer does not interfere with an employee's right to reinstatement if that employee is terminated after taking leave in excess of the 12 weeks permitted by the FMLA."); see also Freeman v. Koch Foods of Ala., 777 F. Supp. 2d 1264, 1289 (M.D. Ala.

22

2011) ("[T]he right to reinstatement terminates once the twelve weeks of FMLA leave are finished."). Therefore, summary judgment should be entered for the CCSD on plaintiff's FMLA interference claim.[17]

## 2. FMLA Retaliation Claim (Count II)

To prove FMLA retaliation, plaintiff must show that the CCSD intentionally discriminated against him for exercising his right to medical leave. See 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c). Unlike an interference claim, an employee "bringing a retaliation claim faces the increased burden of showing that [her] employer's actions were motivated by an impermissible retaliatory or

---

[17] Plaintiff cites one unpublished case in support of his interference claim. See Bralo v. Spirit Airlines, Inc., No. 13-60948-Civ., 2014 WL 1092365 (S.D. Fla. Mar. 19, 2014). Plaintiff claims that, like the plaintiff in Bralo, he was "cleared to return to work and provided medical documentation stating the same," but defendant prohibited him from returning, which forced him to talk additional leave. (Pl.'s Resp. [37] 7.) The record fails to support the claim that Mr. Andrews was cleared to return to work before his FMLA leave expired. The Certificate of Health Care Provider form received by the CCSD on October 11, 2019 did not state that plaintiff was cleared to return to work either with or without restrictions. On the contrary, the form stated that plaintiff had hyperkeratosis on both feet and that he would be "unable to stand for long periods of time" while the condition persisted. The Request for Leave form submitted on October 11, 2019 left the "Date Requested Leave Ends" line blank. Finally, the "Release to Return to Work" (Form GARH-8), received by the CCSD on October 14, 2019, did not clear plaintiff to return to work without restrictions until November 13, 2019, a date after exhaustion of plaintiff's FMLA leave.

discriminatory animus." Strickland, 239 F.3d at 1207 (internal quotation marks and citation omitted).

In the absence of direct evidence supporting such a claim, courts apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for evaluating Title VII retaliatory discharge claims. Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 798 (2000). To establish a prima facie claim of retaliation under the FMLA, the plaintiff must show that (1) he engaged in statutorily protected conduct, (2) he suffered a materially adverse action,[18] and (3) there is a causal connection between the two. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010); see also Martin v. Brevard Cty. Public Schs., 543 F.3d 1261, 1268 (11th Cir. 2008) (per curiam) (FMLA retaliation claims assessed under McDonnell Douglas framework).

If the plaintiff establishes a prima facie case of FMLA retaliation under the McDonnell Douglas framework, then the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action. If the defendant does so, then the

---

[18] An adverse employment action in the context of a retaliation claim is an action by an employer that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

24

burden shifts back to the plaintiff to establish that the proffered reason was pretext for retaliation.  Bartels v. S. Motors of Savannah, Inc., 681 F. App'x 834, 837-38 (11th Cir. 2017) (per curiam).

Plaintiff alleges that defendant terminated him in retaliation for requesting FMLA leave.  (Compl. ¶ 56.).  Because requesting and taking FMLA leave is protected activity, see Jones, 854 F.3d at 1271, plaintiff satisfied element one of his prima facie case.[19]  Plaintiff further contends (and it is undisputed) that he suffered an adverse employment action—termination.  (Pl.'s Resp. [37] 9.)  This satisfies element two.  The question then is whether plaintiff has raised a triable issue over whether there is a causal connection between his protected activity and his termination (i.e., element three).

Plaintiff asserts that he has satisfied this burden because of the close temporal proximity between his request for FMLA leave and his discharge.  See Raspanti v. Four Amigos Travel, Inc., 266 F. App'x 820, 823 (11th Cir. 2008) (per curiam) (citation omitted).  As the Circuit has explained, "[t]he causal connection

---

[19] Protected activity also includes an employee's complaints about or opposition to practices made unlawful under the FMLA, see 29 U.S.C. § 2615(a)(2), or participation in an inquiry or proceeding under the Act, see id. § 2615(b). Neither is appliable here.

element is satisfied if a plaintiff shows that the protected activity and adverse action were not wholly unrelated" and, "[g]enerally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." Krutzig, 602 F.3d at 1234 (internal quotation marks and citation omitted).  Given that the decisionmaker here (Mr. Dowd) was obviously aware that plaintiff had sought on September 19, 2019 to take FMLA leave when he penned the October 31, 2019 certified letter notifying plaintiff of his termination, he has established a causal connection and thus a prima facie case of FMLA retaliation.

Because plaintiff has established a prima facie case, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for plaintiff's termination.  Jones, 854 F.3d at 1271 (citation omitted).  However, that "burden is merely one of production; [defendant] need not persuade the court that it was actually motivated by the proffered reasons." Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (internal quotation marks and citation omitted).

Defendant has met its burden by showing that it never considered plaintiff to be on FMLA leave because he failed to submit the necessary paperwork.

26

Moreover, defendant shows that, even if plaintiff had submitted that paperwork, his physician submitted a Release to Return to Work form that did not clear him to return to work without restrictions until November 13, 2019, a date after his FMLA leave was exhausted. Given that plaintiff had exhausted his FMLA leave and he could not perform the essential functions of his position at that time, the case law discussed supra Part III.A.1 allowed CCSD to discharge plaintiff. The CCSD contends that it could not be retaliatory to terminate someone when that very action is lawful under the statute. Finally, defendant notes plaintiff's concession that he has no evidence that the CCSD considered that he had sought FMLA leave when it discharged him. These are all legitimate, non-retaliatory reasons for discharging plaintiff. See Marks v. City of Atlanta, Ga., No. 1:05-CV-0079-CAP-AJB, 2007 WL 9700632, at *28 (N.D. Ga. Jan. 10, 2007) ("[A]n employee's failure to return to work following the expiration of FMLA leave is a legitimate, non-retaliatory reason for terminating an employee."), R. & R. adopted sub nom. Marks v. City of Atlanta, 2007 WL 9700657 (N.D. Ga. Mar. 21, 2007).

Thus, the burden shifts back to plaintiff to show that defendant's reasons are pretext for retaliation. To show pretext, plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie

27

case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Chapman, 229 F.3d at 1024 (internal quotation marks and citation omitted). Moreover, plaintiff may not simply quarrel with the wisdom of defendant's reasons. Brooks v. Cty. Comm'n of Jefferson Cty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006).   Rather, plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks and citation omitted).

Plaintiff submits no probative evidence suggesting that his request for FMLA leave had anything to do with his discharge.   In fact, he admitted in his deposition that he has no evidence connecting his request for FMLA leave to his discharge.  Plaintiff also has no evidence to contradict defendant's reasonable belief (articulated in Mr. Dowd's certified termination letter of October 31, 2019) that he was on an unauthorized and extended absence, given his failure to return the required FMLA documentation, that constituted job abandonment.

Moreover, even if plaintiff had submitted that requested documentation, plaintiff has pointed the Court to no probative evidence suggesting the CCSD's decision to terminate his employment at the expiration of his FMLA leave, when it is undisputed that he could not perform the essential functions of his job, was motivated by the fact that he has taken leave. Plaintiff had already taken one FMLA leave within the past year and had returned to work with no problems. There simply is nothing showing that the CCSD decided to terminate plaintiff because he had gone out of work a second time.[20] Given the lack of evidence that the CCSD acted out of retaliatory animus, the undersigned recommends that summary judgment be entered against plaintiff's FMLA retaliation claim.[21]

---

[20] Plaintiff cites Munoz v. Selig Enterprises, Inc., 981 F.3d 1265 (11th Cir. 2020), and argues it is similar to the instant case. (Pl.'s Resp. [37] 11.) This case is not similar to Munoz, which contained numerous comments by decisionmakers disparaging that plaintiff for taking FMLA leave. 981 F.3d at 1277-78. The record here shows the opposite. Ms. Phillips had to contact plaintiff numerous times to get him to submit what he was supposed to submit.

[21] "If a plaintiff's FMLA retaliation claim fails under this [McDonnell Douglas] framework, he may nonetheless overcome summary judgment by providing a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Dobson v. Fulton Cty., Ga., No. 1:19-cv-00902-ELR-RVG, 2020 WL 5549246, at *11 n.15 (N.D. Ga. July 9, 2020) (internal quotation marks and citation omitted). However, plaintiff has not argued the existence of a convincing mosaic in his Response Brief.

### B.    **Plaintiff's ADA Claims**

Plaintiff alleged that defendant (1) intentionally discriminated against him on the basis of his disability when it terminated him (Compl. Count III); (2) failed to accommodate his alleged disability (id. Count VI); and (3) retaliated against him when he engaged in protected activity by requesting reasonable accommodation (id. Count V).   However, in response to Defendant's Motion seeking entry of summary judgment on all three claims, plaintiff argued only the viability of his failure to accommodate and retaliation claims.   (See Pl.'s Resp. [37] 12-19.) Therefore, plaintiff has abandoned the disability discrimination claim in Count III. See also Kramer v. Gwinnett Cty., Ga., 306 F. Supp. 2d 1219, 1221 (N.D. Ga.) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."), aff'd, 116 F. App'x 253 (11th Cir. 2004) (table decision).  Thus, the Court only addresses plaintiff's failure to accommodate and ADA retaliation claims below.

### 1.    <u>Failure to Accommodate (Count VI)</u>

The ADA requires an employer to accommodate an employee with a known disability unless the accommodation would result in undue hardship to the employer. <u>Earl v. Mervyns, Inc.</u>, 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam). To prevail on a claim of disability discrimination based on an alleged failure to accommodate, a plaintiff must demonstrate that he (1) is disabled;[22] (2) was a "qualified individual"[23] when he suffered the adverse employment action; and (3) was discriminated against because of his disability by being denied a reasonable

---

[22] The ADA defines "disability" as:  "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).  Major life activities include, but are not limited to: "(i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and (ii) The operation of a major bodily function." 29 C.F.R. § 1630.2(i)(1)(i)-(ii).

[23]    A "qualified individual" is someone who, with or without reasonable accommodations, can perform the essential functions of the job.  <u>Mazzeo v. Color Resolutions Int'l, LLC</u>, 746 F.3d 1264, 1268 (11th Cir. 2014).  "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires.  The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).

accommodation that would have allowed him to keep working.   Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).

With regard to the first element, a plaintiff must present evidence establishing that his employer had actual knowledge of his alleged disability or regarded him as disabled.   Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1186 (11th Cir. 2005).   The undisputed material facts here show that the CCSD did not have actual knowledge of plaintiff's claimed disability.   There is also no evidence that it regarded him as disabled.   Although plaintiff now claims that he was substantially limited in the major life activity of walking (Pl.'s Resp. Br. [37] 14), the record fails to substantiate that assertion.   Indeed, plaintiff's testimony contradicts it.   As noted supra, plaintiff testified that he "didn't have a problem with actually walking," that his condition (neuropathy) is "not a disability," that he "could walk," that he "can run," that when he obtained inserts for his shoes, "everything was great," and that his hyperkeratosis "never flared up."   (DSMF ¶ 43.)   Given that plaintiff submitted a Release to Return to Work with no restrictions as of November 13, 2019, it would have appeared to the CCSD that plaintiff was not disabled but had a temporary impairment that had been resolved.   See Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir. 1999) ("A temporary inability to work while recuperating

from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act.").

Although plaintiff's failure to establish the first element could end the analysis, to provide a complete Report the Court looks to the third element as well. An employer's duty to provide a reasonable accommodation[24] is not triggered *unless* a specific demand for an accommodation has been made. Lucas, 257 F.3d at 1255-56 (emphasis added); see also Laun v. Bd. of Regents of Univ. Sys. of Ga., No. CV 118-033, 2019 WL 4694940, at *8 (S.D. Ga. Sept. 25, 2019) ("[T]he initial burden is on Plaintiff to show he made a sufficient request for a reasonable accommodation.").[25]   An employee makes an adequate request for a reasonable accommodation when it is sufficiently specific and reasonable.   Gaston v.

---

[24] A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(b).

[25] "[T]he Eleventh Circuit requires that a plaintiff first request an accommodation.  Thus, Defendant's knowledge of h[is] disability does not mean that it had to accommodate Plaintiff on its own initiative." Haines v. Cherokee Cty., Ga., No. 1:08-CV-2916-JOF/AJB, 2010 WL 2821853, at *21-22 (N.D. Ga. Feb. 16, 2010) (citation omitted), R. & R. adopted as modified by 2010 WL 2821780 (N.D. Ga. July 15, 2010).

33

Bellingrath Gardens & Home, Inc., 167 F.3d at 1363-64 (11th Cir. 1999) ().  "For a request to be sufficiently specific, it does not have to employ any magic words, but the request must be definite enough that under the circumstances, the employer can be said to know of both the disability and desire for an accommodation." Laun, 2019 WL 4694940, at *9.  "An employee's failure to request a reasonable accommodation is fatal to the prima facie case; 'the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.'" Warren v. Volusia Cty., Fla., 188 F. App'x 859, 863 (11th Cir. 2006) (per curiam) (quoting Gaston, 167 F.3d at 1363).

The undisputed material facts again go against plaintiff.  It is undisputed that Mr. Andrews made no request to the CCSD for a reasonable accommodation while out on the FMLA leave he potentially began on September 19, 2019.[26]  Instead,

---

[26] Plaintiff asserts that he asked an unidentified person at an unidentified time if he could sit down when his foot pain flared up.  (Pl.'s Resp. [37] 14-15.)  If this request was made, it must have occurred either before his first FMLA leave or between that leave and the date he sought a second FMLA leave.  It did not occur during the second FMLA leave.  The Court also notes that plaintiff contradicted this assertion when he testified he "didn't have a problem with actually walking," that his condition (neuropathy) is "not a disability," that he "could walk," that he "can run," that when he obtained inserts for his shoes, "everything was great," and that his hyperkeratosis "never flared up." (DSMF ¶ 43.)

plaintiff contends that the CCSD should have known of his need for a reasonable accommodation from the Certification of Health Care Provider Form (GBRIG-1) that his physician submitted on October 11, 2019, which stated that he had hyperkeratosis on both feet, and that he would be "unable to stand for long periods of time" while the condition persisted. (DSMF ¶ 28.)

However, submission of that certification is insufficient to place the CCSD on notice that Mr. Andrew was requesting a reasonable accommodation when it did not know he was disabled. See Hamilton v. Schneider Nat'l Carriers, Inc., No. 1:17-CV-3264-MHC-JSA, 2019 WL 11553744, at *17 (N.D. Ga. Jan. 24, 2019), R. & R. adopted, 2019 WL 11553748 (N.D. Ga. Mar. 7, 2019) (submission of a physician's medical certifications setting out work restrictions insufficient to trigger employer's obligation to engage in the interactive process to determine whether a reasonable accommodation can be made in the absence of evidence it was aware that employee had a physical or mental impairment that could be considered a disability under the ADA); see also Hunter v. Atlanta Pub. Schs., No. 1:18-CV-00869-JPB, 2020 WL 10574760, at *5 (N.D. Ga. Dec. 28, 2020) (doctor's note, which stated that plaintiff was diagnosed with "Long Trigger" and that she was released for "Limited Duty" with a five-minute stretch break every hour "until

[the] next scheduled appointment," was insufficient to show that APS was on notice that plaintiff had a disability under the ADA).   In sum, because plaintiff fails to show that he was disabled or that he requested a reasonable accommodation, his ADA failure to accommodate claim fails as a matter of law.

### 2.   ADA Retaliation (Count V)

Plaintiff alleges that defendant terminated him in retaliation for engaging in protected activity (i.e., requesting a reasonable accommodation).  (Compl. Count V.)  The ADA's anti-retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

To prevail on his ADA retaliation claim, Mr. Andrews must establish each of the following elements of his prima facie case:  (1) he engaged in a statutorily protected expression, (2) he suffered an adverse employment action, and (3) there was a causal link between the two.  Frazier-White v. Gee, 818 F.3d 1249, 1258

36

(11th Cir. 2016).[27] "The first element may be met by a request for a reasonable accommodation." Id.; see also Vaughan v. World Changers Church Int'l, Inc., 1:13-CV-0746-AT, 2014 WL 4978439, at *12 & n.10 (N.D. Ga. Sept. 16, 2014) (request for medical leave considered statutorily protected activity for purposes of ADA retaliation claim).

Plaintiff fails to satisfy the first element because, as already held, he did not engage in protected activity, i.e., he did not request a reasonable accommodation. See Stevenson v. Delta Air Lines, Inc., No. 1:16-CV-002571-AT-LTW, 2021 WL 2677018, at *16 (N.D. Ga. Apr. 12, 2021) (given that plaintiff failed to request reasonable accommodation, her ADA retaliation claim fails for failure to engage in statutorily protected activity); Jenks v. Naples Cmty. Hosp., Inc., 829 F. Supp. 2d 1235, 1253 (M.D. Fla. 2011) (FMLA documents which were approved by the defendant-employer did not constitute request for a reasonable accommodation). The Court need not address the other two prima facie elements given plaintiff's inability to establish the first one. See Turlington v. Atlanta Gas Light Co., 135

---

[27] The burden-shifting framework from McDonnell Douglas also applies to ADA retaliation claims. Batson v. Salvation Army, 897 F.3d 1320, 1328-29 (11th Cir. 2018).

F.3d 1428, 1433 (11th Cir. 1998) ("[S]ummary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a *prima facie* case."). Accordingly, the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment be granted as to plaintiff's ADA retaliation claim.

## IV.   CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment [35] be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO RECOMMENDED**, this 28th day of October, 2021.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE