## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Jeffrey Andrews,

               Plaintiff,

                          Case No. 1:20-cv-4043-MLB

v.

Cobb County School District,

               Defendant.

_____/

## OPINION & ORDER

Plaintiff Jeffrey Andrews sued Defendant Cobb County School District for terminating his employment in violation of the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). Defendant now moves for summary judgment. (Dkt. 35.) The Magistrate Judge recommends granting Defendant's motion. (Dkt. 42.) Plaintiff has filed objections to which Defendant responded. (Dkts. 44; 45.) The Court overrules Plaintiff's objections and adopts the Magistrate Judge's report and recommendation ("R&R").

## I.   Background

Defendant hired Plaintiff in 2015.  (Dkt. 38 ¶ 2.)  It later promoted him to head custodian of an elementary school.  (*Id.* ¶ 3.)  This position required Plaintiff to be on his feet all day (6:00 a.m.–2:30 p.m. or 10:30 a.m.–7:00 p.m.) except for a 30-minute lunch break and "breaks as needed."  (*Id.* ¶¶ 6, 9.)  He could not perform any of his duties while sitting.  (*Id.* ¶ 6.)

In December 2018, Plaintiff took six weeks of FMLA leave to get stents placed in his legs (as apparently he was having some pain in his feet).  (*Id.* ¶¶ 13–15.)  He returned to work in February 2018 "with no restrictions or limitations."  (Dkts. 35-3 at 18; 38 ¶ 14.)  He told the school principal his surgery "healed" a "blockage" in his legs but he would still have to see his doctor periodically for follow-up appointments.  (Dkts. 36-1 at 15; 38 ¶ 17.)

On September 16, 2019, Plaintiff requested another leave of absence under the FMLA because "his physician wanted him to rest his feet to avoid having surgery on his bunions."  (Dkt. 38 ¶ 20.)  In response, Defendant sent Plaintiff "the necessary documents relating to [his] request," including a "Request for Leave" form and a "Certification of

Health Care Provider" form.  (Dkts. 35-3 at 25; 38 ¶¶ 22–23.)  Defendant told Plaintiff this "paperwork should be completed and returned to the Benefits Department" by October 1, 2019.  (Dkts. 35-3 at 25; 38 ¶ 22.)  Defendant made it clear Plaintiff's leave was "unapproved until [the] documents . . . [were] received by the Benefits Department."  (Dkts. 35-3 at 25; 38 ¶ 22.)  Nonetheless, "[Plaintiff] was allowed to immediately begin his FMLA leave on September 16, 2019, pending receipt of his paperwork."  (Dkt. 38 ¶ 21.)

Plaintiff did not return his paperwork by the October 1 deadline.  (*Id*. ¶ 24.)  So Defendant sent him a follow-up letter instructing him to "return all required leave of absence paperwork to the Benefits Department by 10/14/19."  (Dkts. 35-3 at 27; 38 ¶ 24.)  The letter stressed that, "[u]ntil the department receives all required documents, [Plaintiff's] absence is an unauthorized leave of absence."  (Dkts. 35-3 at 27; 38 ¶ 25.)  The letter also warned Plaintiff the Benefits Department would forward his file to the Employee Relations Department if he did not return the necessary paperwork by October 14, 2019.  (Dkts. 35-3 at 27; 38 ¶ 25.)

On October 11, 2019, Plaintiff sent Defendant a partially completed version of the Request for Leave form.  (Dkt. 38 ¶ 27.)  The form required

Plaintiff to provide a specific start date and a specific end date for his requested leave.  (Dkt. 35-3 at 28.)  But Plaintiff only provided a start date (September 16, 2019) while leaving the end date blank.  (*Id.*; Dkt. 38 ¶ 27.)  Defendant called Plaintiff and left a voicemail asking him to provide an end date.  (Dkt. 38 ¶ 30.)  Plaintiff never did so.  (*Id.* ¶ 32.)

On October 11, 2019, Plaintiff's physician sent Defendant a completed version of the Certification of Health Care Provider form.  (*Id.* ¶ 28.)  The form said Plaintiff was "unable to stand for long period[s] of time due to painful hyperkeratosis on both feet" and that this made him "unable to perform [some] of [his] job functions."  (Dkts. 36-2 at 20; 38 ¶ 28.)[1]  Later that day, Jennifer Phillips (an employee in Defendant's Benefits Department) emailed Plaintiff a "Release to Return to Work" form.  (Dkts. 35-3 at 29; 38 ¶ 31.)  The form required a physician to indicate when the "[e]mployee may return to work **without** restrictions."  (Dkt. 35-3 at 29.)  Ms. Phillips explained in her email that the form "must say you may work without restrictions."  (Dkts. 36-2 at 25; 38 ¶ 31.)  Plaintiff's physician returned the form to Defendant on October 14, 2019.

---

[1] Hyperkeratosis involves "a thickening of the outer layer of the skin." (Dkt. 38 ¶ 18.)

(Dkt. 35-3 at 39.)  The form said Plaintiff could return to work without restrictions on November 13, 2019.  (*Id.*; Dkt. 38 ¶ 33.)

Plaintiff's annual FMLA leave expired on October 25, 2019.  (Dkt. 38 ¶ 34.)  A week later, Defendant sent Plaintiff a letter explaining he had "failed to submit the necessary paperwork [and] ha[d] not reported to work for twenty-seven (27) consecutive work days."  (Dkts. 35-3 at 30; 38 ¶ 40.)  The letter characterized these actions as "job abandonment" and "voluntary resignation:"

> [Y]our unauthorized and undocumented extended absence violates Administrative Rule GARH-R: Short-Term Leaves and Absences.  This rule clearly states the following: "**For classified employees, unauthorized absences and/or absences without notification which last three or more consecutive work days are deemed to be job abandonment and such abandonment will be considered a voluntary resignation of employment.**"
>
> Based on the foregoing facts and policy, we consider your actions to be job abandonment and a violation of the GARH-R rule.  We therefore accept your voluntary resignation and consider the matter of your employment settled.

(Dkts. 35-3 at 30–31; 38 ¶ 41.)  The letter was signed by the Director of Defendant's Employee Relations Department.  (Dkt. 35-3 at 31.)

Plaintiff filed this lawsuit about a year later.  (Dkt. 1.)  He asserts claims for FMLA interference (Count 1), FMLA retaliation (Count 2),

ADA discrimination (Count 3), failure to accommodate a disability in violation of the ADA (Count 4), and ADA retaliation (Count 5).   (*Id.*) Defendant moves for summary judgment on each claim.  The Magistrate Judge recommends granting Defendant's motion.  Plaintiff objects to the R&R.

## II.   Standard of Review

### A.   Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  The nonmoving party then has the burden of showing summary judgment is improper by coming forward with "specific facts" demonstrating a genuine dispute.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact

to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

**B.    R&R**

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020); *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). And, in most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the

district court's order based on unobjected-to factual and legal conclusions." *McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016). Ultimately, whether or not objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Discussion

### A. FMLA Interference (Count 1)

The FMLA gives employees "the right to take twelve weeks of job leave because of a serious health condition." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). An employee who takes this leave has "the right to be reinstated to [his] original job (or an equivalent)" when his leave ends. *Id.* But "an employee returning from FMLA leave who cannot perform the essential functions of his job due to a physical condition need not be reinstated or restored to another position." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1268 (11th Cir. 2017) (citing 29 C.F.R. § 825.216(c)).

Plaintiff claims Defendant violated the FMLA by refusing to let him return to work after his leave. (*See* Dkts. 37 at 7; 44 at 6–7.) The Magistrate Judge found this claim fails because standing for long periods

8

was an "essential function" of Plaintiff's job and Plaintiff could not perform that function when his leave expired on October 25, 2019.  (Dkt. 42 at 21–23).

The Court agrees.  Plaintiff testified his job required him to stand virtually all day, Plaintiff's physician told Defendant on October 11, 2019 that Plaintiff was "unable to stand for long period[s] of time," and Plaintiff was not cleared to work without this limitation until November 13, 2019.  Thus, Plaintiff had no right to reinstatement before November 13 because he could not perform his essential job functions.  And he had no right to reinstatement after that date because his twelve weeks of FMLA leave had already expired.  *See Freeman v. Koch Foods of Alabama*, 777 F. Supp. 2d 1264, 1289 (M.D. Ala. 2011) ("[T]he right to reinstatement terminates once the twelve weeks of FMLA leave are finished."); *see, e.g., Grace v. Adtran, Inc.*, 470 F. App'x 812, 816 (11th Cir. 2012) ("Because Grace was still restricted from lifting more than 10-pounds at the end of her FMLA leave, she remained unable to perform an essential function of her position and, thus, was unentitled to return to her position.").

Plaintiff objects that Defendant should have reinstated him despite his standing limitation because he "was able to perform the essential functions of his job *with reasonable accommodations*." (Dkt. 44 at 7 (emphasis added).) But, unlike the ADA, "the FMLA does not require an employer to provide a reasonable accommodation to an employee." *Brown v. Montgomery Surgical Ctr.*, 2013 WL 1163427, at *5 (M.D. Ala. Mar. 20, 2013).[2] Instead, it requires an employer to reinstate an employee who can "perform the essential functions of [his] position *without an accommodation*." *Henderson v. Mid-S. Elecs., Inc.*, 2016 WL 3068413, at *11 (N.D. Ala. June 1, 2016) (emphasis in original).[3] This is fatal to Plaintiff's argument.

---

[2] *See Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 922 (11th Cir. 2017) ("Holton sought to return to her position on a modified basis, which is not a right protected by the FMLA."); *Gilliard v. Georgia Dep't of Corr.*, 500 F. App'x 860, 865 (11th Cir. 2012) ("[T]he reasonable-accommodation requirement under the ADA is distinct from a FMLA interference claim.").

[3] *See Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 587 (3d Cir. 2004) ("[T]he employee must be able to perform the essential functions of the job without accommodation."); *Piburn v. Black Hawk-Grundy Mental Health Ctr., Inc.*, 2016 WL 1464570, at *19 (N.D. Iowa Apr. 13, 2016) ("Because Piburn is unable to perform the essential functions of his job . . . without accommodation, he is not entitled to reinstatement under the FMLA.").

Plaintiff does not specifically object that he could perform the essential functions of his job *without* an accommodation. So that argument is waived. But, even if Plaintiff had adequately raised the argument, it would fail on the merits. Plaintiff testified at his deposition that, despite his hyperkeratosis, he thought he could "perform [his] duties at 100 percent." (Dkt. 36-1 at 25, 27; *see* Dkt. 41 ¶ 16.) But Plaintiff's "subjective assessment" that he "would have been able to timely resume [his] duties" cannot overcome his doctor's opinion that he "could not return to work [without restrictions] until well after the FMLA-leave had expired." *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 510, 514 (6th Cir. 2006); *see Wilson v. AZ Auto. Corp.*, 2007 WL 1017097, at *7 (E.D. Mich. Mar. 30, 2007) ("The only evidence Plaintiff has presented of her ability to return to work are her subjective and contradictory assertions, which are not sufficient to create a question of fact."). Moreover, Plaintiff testified that, whatever he privately thought about his abilities, he ultimately deferred to his physician's view that he could not work without restrictions until November 13, 2019. (*See* Dkt. 36-1 at 25–28). That was the only view he ever communicated to Defendant. *See Burke v. Iowa Methodist Med. Ctr.*, 28 F. App'x 604, 607 (8th Cir. 2002)

11

("An employee cannot expect an employer to read her mind.").  And his bald assertion that he could work without restrictions runs into his own argument that he requested and should have received an accommodation under the ADA.  Plaintiff never even tries to reconcile these positions. *See Brown*, 2013 WL 1163427, at *5 ("By pleading that she requested to return to work with an ADA reasonable accommodation, Ms. Brown effectively admits that she was not able to perform the essential functions of her job."); *Henderson*, 2016 WL 3068413, at *11 (same).

Plaintiff's school principal also testified that, because she "wasn't always around" and "didn't manage" everything her staff did, school employees "could take a break whenever [they] felt like it" or "as needed." (Dkt. 36-3 at 7.)  But no jury could interpret this literally, that is, that he could perform the essential functions of the job without an accommodation because he could just sit whenever he needed to do so. Such an interpretation would be absurd because no school (or business) could function if staff just worked "whenever [they] felt like it." Reasonably construed, the principal's point was simply that she did not micromanage her staff and let them handle their own breaks.  Nothing about this suggests an employee who cannot stand for "long period[s]"

12

could still do a job that requires standing all day.  (*See* Dkt. 38 ¶¶ 6, 28.)
To the extent Plaintiff contends otherwise, the principal's unremarkable
testimony cannot bear the weight of his argument.  Moreover, Plaintiff
(directly and through his doctor) repeatedly told Defendant he could not
"perform[] the essential functions of [his] job" without restrictions until
November 2019.  (*See* Dkts. 35-3 at 23, 29; 36-3 at 18.)  Now, years later,
he essentially blames Defendant for believing him.  That is an audacious
reversal.  And Plaintiff cites no authority requiring the Court to go along
with it.

At the end of the day, no reasonable jury could say Defendant
violated Plaintiff's right to reinstatement under the FMLA.  So the Court
overrules Plaintiff's objection and adopts the Magistrate Judge's
recommendation on Count 1.

## B.   FMLA Retaliation (Count 2)

### 1.   Law

"To prove FMLA retaliation, an employee must show that his
employer intentionally discriminated against him for exercising an
FMLA right."  *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267
(11th Cir. 2008).  This means "plaintiff must show [his] employer's

actions were motivated by an impermissible retaliatory or discriminatory animus." *Caldwell v. Clayton Cnty. Sch. Dist.*, 604 F. App'x 855, 860 (11th Cir. 2015).

"Absent direct evidence of retaliatory intent, [courts] apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Martin*, 543 F.3d at 1268. "Under that approach, an employee claiming FMLA retaliation must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Id.* "Once the employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate reason for the adverse action." *Id.* "If the employer does so, the employee must then show that the employer's proffered reason was pretextual." *Id.* "Pretext is only proven if it is shown both that the reason was false, and that discrimination or retaliation was the real reason behind the challenged action." *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016). If the employee cannot establish pretext, the employer is entitled to summary

judgment.  *See Bruno v. Greene Cnty. Sch.*, 801 F. App'x 681, 684 (11th Cir. 2020).

## 2.   Analysis

Plaintiff asserts an FMLA retaliation claim on the theory that Defendant terminated him for requesting and taking leave.  (Dkt. 37 at 9.)  The Magistrate Judge found this claim fails under the pretext prong of the *McDonnell Douglas* test.  (*See* Dkt. 42 at 23–29.)  The Court agrees.

The Magistrate Judge first concluded Plaintiff established a prima facie case of retaliation because (1) Plaintiff requested and took FMLA leave (protected activity); (2) Plaintiff was terminated (adverse action); and (3) Defendant knew about Plaintiff's FMLA leave when it terminated him (causal relationship).  (*Id.* at 25–26.)  Next, the Magistrate Judge found Defendant articulated two legitimate reasons for Plaintiff's termination: (1) Plaintiff "failed to submit the necessary paperwork" for his leave; and (2) "[P]laintiff had exhausted his FMLA leave and he could not perform the essential functions of his position at that time."  (*Id.* at 26–27.)  Finally, the Magistrate Judge concluded summary judgment was appropriate because Plaintiff failed to show Defendant's proffered reasons were pretextual.  (*Id.* at 27–29.)

Plaintiff objects, arguing he *has* shown Defendant's reasons are pretextual. (Dkt. 44 at 8.) He cites Ms. Phillips' testimony that "Defendant does not allow employees to return to work with restrictions after taking FMLA leave because it is a liability." (*Id.* at 10.) And he points out that, when Ms. Phillips sent Plaintiff the "Release to Return to Work" form, she told him it "must say you may work without restrictions." (Dkt. 36-2 at 25; *see* Dkt. 44 at 10–11.) Plaintiff says all of this "demonstrate[s] the Defendant's animus towards [FMLA] leave . . . and contradicts the reason given for Plaintiff's termination." (Dkt. 44 at 10.) No reasonable jury could agree.

First, Plaintiff paints an incomplete picture of Defendant's policy. Defendant does require employees returning from FMLA leave to be able to perform their essential job functions without restrictions. (*See* Dkts. 36-2 at 8–10; 38 ¶ 37.) But Defendant also provides reasonable accommodations upon request. (*See* Dkts. 36-2 at 8–10; 38 ¶ 38; 41-1 at 1–2.) Ms. Phillips' focus on the former (returning without restrictions) is unsurprising because she has no involvement with the latter (providing accommodations). (*See* Dkts. 36-2 at 9–10; 38 ¶ 39.)

Second, Defendant's policy does not suggest FMLA retaliation. The FMLA *allows* employers to terminate an employee returning from leave if the employee cannot "perform the essential functions of [his or her] position without an accommodation." *Henderson*, 2016 WL 3068413, at *11; *see* C.F.R. § 825.216(c). Defendant cannot display "animus" towards the FMLA by doing what the FMLA allows it to do. Moreover, Defendant's policy of requiring employees to return to work without restrictions does not "contradict" either of Defendant's proffered reasons for terminating Plaintiff. It has nothing to do with Defendant's first reason (Plaintiff's failure to return his paperwork). And it is the very foundation for Defendant's second reason (Plaintiff's inability to perform his essential job functions). There is no inconsistency.[4]

Finally, Plaintiff does not contest the facts underlying Defendant's proffered reasons. He admits he failed to complete his FMLA paperwork.

---

[4] It is also unclear whether Defendant's policy applies only to employees returning from FMLA leave or to all employees generally. If the latter, the policy has nothing to do with the FMLA and would have led to Plaintiff's termination "regardless of his requests for FMLA leave." *White v. Dixie*, 741 F. App'x 649, 661 (11th Cir. 2018). That is fatal to an FMLA retaliation claim. *See id.; Guasch v. Carnival Corp.*, 723 F. App'x 954, 958 (11th Cir. 2018) (adverse employment action must be "impermissibly based on [employee's] requests for FMLA leave").

(Dkt. 38 ¶¶ 27, 32.)  And he testified his "essential duties" required him to "stand . . . and walk around" for "[t]he whole eight hours" of his workday (except for lunch), and that he could no longer do this according to his physician.  (*Id.* ¶¶ 6, 28.)  These concessions make it particularly hard for him to show pretext.  *See Yoosun Han v. Emory Univ.*, 658 F. App'x 543, 548 (11th Cir. 2016) ("An employee cannot show that the reasons are pretextual when she admits their truth, and Han has admitted to the insubordination that Emory cites as the reason for her termination.").[5]  To do so, he must show the facts underlying Defendant's explanation, *though true*, were not what "actually motivated" Defendant and that "discrimination or retaliation was the real" motivation.  *Id.*; *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 417 (11th Cir. 2016).

Plaintiff has not made this showing.  On the contrary, he testified he has no evidence Defendant considered his FMLA leave when deciding whether to terminate him.  (Dkt. 38 ¶ 42.)  He concedes Defendant

---

[5] *See also Ramos v. Delphi Behav. Health Grp., LLC*, 2022 WL 1415856, at *4–5 (11th Cir. May 4, 2022) (employee failed to show pretext because she "admitted to the misconduct cited by [her employer]"); *Awaad v. Largo Med. Ctr., Inc.*, 564 F. App'x 541, 544 (11th Cir. 2014) (employee failed to show pretext because his employer's proffered reason was "he failed to complete the MEC's requirements" and he "concedes that he did not complete the MEC's requirements").

previously let him take six weeks of FMLA leave without issue. (*Id.* ¶¶ 13–14). And Defendant's proffered reasons are "one[s] that a reasonable employer might rely upon" to terminate an employee. *Awaad*, 564 F. App'x at 544; *see, e.g.*, *Dockens v. Dekalb Cnty. Sch. Sys.*, 441 F. App'x 704, 709 (11th Cir. 2011) (school system could bar employee from returning to work where she was "still medically unable to work when her FMLA leave ended" and she "never provided the School System with the required [FMLA paperwork]"). Indeed, the evidence suggests Defendant *did* rely on at least one of its proffered reasons because it explicitly warned Plaintiff he could face employment action unless he completed his FMLA paperwork, it gave Plaintiff an opportunity to resolve the issue (including an extension), Plaintiff ultimately failed to complete his paperwork, and Defendant cited that failure in its termination letter.

At the end of the day, Plaintiff has not "met [Defendant's] reasons head on and rebutted them." *Webb v. Int'l Bus. Machines Corp.*, 458 F. App'x 871, 877 (11th Cir. 2012). All he does is cite Defendant's policy about returning to work without restrictions. That policy is permissible under the FMLA. And it has nothing to do with at least one of

Defendant's proffered reasons (Plaintiff's failure to return his paperwork).   "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut *each* reason to survive a motion for summary judgment." *Bruno v. Greene Cnty. Sch.*, 801 F. App'x 681, 684 (11th Cir. 2020) (emphasis added).  So it does not establish pretext.   Despite Plaintiff's objections, the Court agrees with the Magistrate Judge that Defendant is entitled to summary judgment on Count 2.

## C.   ADA Discrimination (Count 3)

Count 3 asserts a claim for disability discrimination under the ADA.   (Dkt. 1 ¶¶ 62–69.)   The Magistrate Judge found Plaintiff abandoned this claim by failing to address it in response to Defendant's motion for summary judgment.   (Dkt. 42 at 30.)   Plaintiff's objection to this finding is one sentence long: "Plaintiff did not abandon his disability discrimination claim."   (Dkt. 44 at 11.)   "This conclusory statement is not a valid objection to the R&R and the Court will not consider it."   *Doxie v. Chipotle Mexican Grill, Inc.*, 2015 WL 5737359, at *10 n.8 (N.D. Ga. Sept. 29, 2015); *see Favors v. Atlanta Indep. Sch. Sys.*, 2017 WL 8186584, at *4

(N.D. Ga. Mar. 21, 2017) ("Because these objections are general, vague, and conclusory, the Court does not consider them.").

The objection is also wrong on the merits.  Defendant moved for summary judgment on Count 3.  (*See* Dkt. 35-2 at 14–20.)  Plaintiff never responded to that argument.  He addressed only his ADA accommodation and retaliation claims (Counts 4 and 5).  (*See* Dkt. 37 at 12–19.)  This constitutes abandonment of Count 3.  So Defendant is entitled to summary judgment on that claim.  *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (at summary judgment, "when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned"); *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

### D.   ADA Accommodation (Count 4)

Plaintiff claims Defendant failed to accommodate his disability in violation of the ADA because it did not let him come back to work with his standing limitations.  (*See* Dkts. 37 at 14–16; 41 ¶¶ 14–15.)  The Magistrate Judge found this claim fails because Plaintiff lacked a known

disability.  (*See* Dkt. 42 at 31–33.)  Plaintiff objects, but the Court agrees with the Magistrate Judge.

"The ADA requires an employer to accommodate an employee with a known disability unless the accommodation would result in undue hardship to the employer."  *Batson v. Salvation Army*, 897 F.3d 1320, 1326 (11th Cir. 2018).  An employee is disabled if he has "a physical or mental impairment that substantially limits one or more major life activities" such as walking or standing.  42 U.S.C. §§ 12102(1)(A), (2)(A).[6] An employer must have "actual knowledge of the disability in order to [be] liable for a violation of the ADA."  *Hamilton v. Schneider Nat'l Carriers, Inc.*, 2019 WL 11553744, at *18 (N.D. Ga. Jan. 24, 2019).  "The

---

[6] An employee is also disabled if he has "a record of such an impairment" or is "regarded as having such an impairment."  42 U.S.C. §§ 12102(1)(B)–(C).  But neither definition is at issue here.  Plaintiff does not argue he is disabled under the former, and he is not entitled to a reasonable accommodation under the latter.  *See Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1183 n.11 (11th Cir. 2019) ("[A]n employer is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong." (quoting 29 C.F.R. § 1630.9(e))); *Jordan v. City of Union City, Ga.*, 646 F. App'x 736, 740 n.5 (11th Cir. 2016) ("[A] reasonable accommodation [is not] available to [an employee] based solely on a 'regarded as' theory of disability."); *Adams v. Crestwood Med. Ctr.*, 504 F. Supp. 3d 1263, 1294 (N.D. Ala. 2020) ("[A]n individual covered by the 'regarded as' prong of the definition of disability is not entitled to reasonable accommodation." (citing 42 U.S.C. § 12201(h)).

relevant time period for assessing the existence of a disability, so as to trigger the ADA's protections, is the time of the alleged discriminatory act." *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019).

Plaintiff claims the hyperkeratosis with which he was diagnosed in September 2019 was a disability.  (Dkt. 41 ¶¶ 3, 14–15; *see* Dkt. 36-2 at 20.)  This condition (essentially thick skin on his feet) made him "unable to stand for long periods."  (Dkt. 41 ¶ 14.)  But it apparently did so for only two months because Plaintiff's physician cleared him to work without restrictions in November 2019.  Given its limited duration and severity, no reasonable jury could say Plaintiff's hyperkeratosis constituted a known disability under the ADA.  *See Wood v. Gilman Bldg. Prod., Inc.*, 2018 WL 10667464, at *4 (N.D. Fla. Mar. 19, 2018) ("[N]on-severe, temporary impairments do not render a person disabled under the ADA."); 29 C.F.R. § Pt. 1630, App. ("Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe.").[7]

---

[7] *See, e.g., Francis v. Hartford Bd. of Educ., City of*, 760 F. App'x 34, 36 (2d Cir. 2019) (injuries limiting plaintiff's ability to lift and climb stairs

The record also includes scattered references to other potential impairments (*e.g.*, "blockage," "bunions," "neuropathy," "diabetes mellitus," and "peripheral vascular disease"), medical treatment (*e.g.*, "stents," "surgery," and "popliteal artery bypass"), and physical limitations (*e.g.*, "limited . . . ability to walk," "limping," and difficulty "jog[ging] behind someone"). (*See, e.g.*, Dkt. 35-3 at 16–17, 29; 37 at 14;

---

for 2–5 months "were too brief and too minor to qualify as disabilities under the ADA"); *Reed v. Forney Indus., Inc.*, 2019 WL 10784537, at *6 (M.D. Fla. Feb. 11, 2019) ("[Plaintiff] tore his meniscus, had surgery, and returned to work a month later with no restrictions or requested accommodations. . . . Under these circumstances, the Court cannot conclude [he] was actually disabled within the meaning of the ADA."); *Baldwin v. Wilkie*, 2019 WL 480503, at *12 n.18 (M.D. Fla. Feb. 7, 2019) (plaintiff likely not disabled despite experiencing physical limitations for two 2-month periods after shooting himself in the finger and undergoing surgery); *Winnie v. Infectious Disease Assocs., P.A.*, 2018 WL 10456834, at *4 (M.D. Fla. Feb. 28, 2018) (plaintiff not disabled despite temporary restrictions following shoulder surgery, including "no work at all for two weeks following the procedure; no use of her upper extremity from two weeks to eight weeks following the procedure; and only light duty from eight weeks to four months following the procedure"); *Leone v. All. Foods, Inc.*, 2015 WL 4879406, at *7 (M.D. Fla. Aug. 14, 2015) ("Because Leone's [eye] impairment was undisputedly short-term in duration and his vision was not totally impaired, it did not substantially limit a major life activity to constitute an actual disability under the ADA."); *see also Cazeau v. Wells Fargo Bank, N.A.*, 614 F. App'x 972, 982 (11th Cir. 2015) (although "Wells Fargo placed [plaintiff] on temporary medical leave (or short term disability leave)," this did not mean "Wells Fargo ever regarded him as substantially limited in any major life activity").

41 ¶¶ 4–5, 7–9, 20; 44 at 11–12.)   Plaintiff is unclear about how these things connect, where they fit into his ADA theory (if at all), or the extent to which they were ongoing when Defendant terminated him.   But, even construing everything in Plaintiff's favor, the Court agrees with the Magistrate Judge that they do not establish a known disability that Defendant failed to accommodate.   (*See* Dkt. 42 at 32.)   Plaintiff himself testified he "didn't have a problem with actually walking," "everything was great," he could "run," and his neuropathy was "not a disability." (Dkt. 38 ¶ 43.)   And Plaintiff's school principal testified she did not generally "notice anything out of the ordinary" about Plaintiff's walk (and never knew about his diagnoses).   (Dkts. 36-3 at 3; 38 ¶ 45.)[8]   Given the totality of the record here, the Court agrees with the Magistrate Judge that Defendant is entitled to summary judgment on Count 4.

---

[8] The principal did notice Plaintiff had a slight "limp," but she "just really thought that's the way he walked . . . you know, a cool-type of walk." (Dkts. 36-3 at 3; 41 ¶ 8.)  She also asked Plaintiff about his gait before he got medical treatment, she sometimes observed he walked slowly, and she gave him a podiatrist's card once after he told her his foot was sore. (Dkts. 36-1 at 18; 36-3 at 3–4; 41 ¶ 9.)  None of these things establish a known disability that Defendant failed to accommodate.

## E.    ADA Retaliation (Count 5)

Count 5 asserts an ADA retaliation claim on the theory that Defendant terminated him for requesting a reasonable accommodation. (Dkts. 1 ¶ 78; 37 at 18.)  The Magistrate Judge found this claim fails because Plaintiff never asked Defendant for an accommodation.  (Dkt. 42 at 36–38.)  The Court agrees.

"In order to establish a prima facie case of [ADA] retaliation, [plaintiff] must show that: (1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and his protected expression."  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001).  "The first element may be met by a request for a reasonable accommodation."  *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).  The Eleventh Circuit has not "determine[d] precisely what form the request for a reasonable accommodation must take."  *Porterfield v. Soc. Sec. Admin.*, 2021 WL 3856035, at *6 (11th Cir. Aug. 30, 2021).  But "a plaintiff can be said to have made a request for accommodation when the defendant has enough information to know of both the disability and desire for an accommodation."  *Id.*

26

Plaintiff claims he "made a reasonable request for accommodation to be able to sit when his [hyperkeratosis] flare[d] up." (Dkt. 37 at 18.) He says "this request was made when [his] physician provided paperwork to Defendant which stated Plaintiff would be unable to stand for long periods due to the pain from [the] condition." (*Id.*; *see* Dkt. 38 ¶ 36.) The Magistrate Judge rejected this argument. (Dkt. 42 at 33–36.) And for good reason. As explained above, the fact that Plaintiff's hyperkeratosis prevented him from standing "for long periods" during a two-month window did not show he was disabled. So the paperwork about Plaintiff's hyperkeratosis did not give Defendant "enough information to know of [a] disability," much less a "desire for . . . accommodation." *Porterfield*, 2021 WL 3856035, at *6.

Plaintiff objects that "Defendant foreclosed all avenues for Plaintiff to request a reasonable accommodation." (Dkt. 44 at 14.) But no reasonable jury could agree. Plaintiff was in contact with Ms. Phillips from Defendant's Benefits Department. He could easily have sent her an accommodation request. Indeed, Ms. Phillips testified that, had he done so, she "would have sent him the links for ADA and the person to contact." (Dkt. 36-2 at 10.)

Perhaps Plaintiff means that, although he *could* have asked for an accommodation, it would have been *futile* for him to do so because Defendant would have refused.  If that is what he means, his objection still fails.  He "cites no authority for the proposition that perceived futility exempts plaintiffs from the 'protected activity' requirement of a . . . retaliation claim." *Kavianpour v. Bd. of Regents of Univ. Sys. of Ga.*, 2021 WL 2635854, at *10 n.7 (N.D. Ga. Mar. 29, 2021).  And, on the record here, no jury could say it *was* futile for Plaintiff to request an accommodation.  Ms. Phillips testified her department would have facilitated his request.  And Defendant's employee handbook says "[r]easonable accommodations for qualified individuals with a disability will be provided, following the ADA guidelines"—though "it is the employee's duty to request the accommodation." (Dkts. 38 ¶ 38; 41-1 at 4.)  Defendant directed Plaintiff to this handbook when he was hired. (Dkt. 41-1 at 1.)  But Plaintiff failed to pursue the relief it describes.

Plaintiff never requested an accommodation, which means he did not engage in protected expression under the ADA.  That is fatal to his

retaliation claim.   So Defendant is entitled to summary judgment on Count 5.[9]

## IV.   Conclusion

The   Court   **OVERRULES**   Plaintiff's   Objections   (Dkt.   44), **ADOPTS** the Magistrate Judge's Final Report and Recommendation (Dkt. 42), and **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 35).

**SO ORDERED** this 1st day of July, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[9] As the Magistrate Judge noted, Plaintiff's failure to request an accommodation is also fatal to Count 4.   (*See* Dkt. 42 at 33–36)*; see Frazier-White*, 818 F.3d at 1255–56 ("[A]n employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.").